**WO**                                                                                                          RP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Leonard L. Manning,<br><br>           Plaintiff,<br><br>vs.<br><br>Dora Schriro, et al.,<br><br>           Defendants. | No. CV 07-2553-PHX-SMM (LOA)<br><br>**ORDER** |

Plaintiff Leonard L. Manning, who is confined in the Arizona State Prison Complex-Lewis (ASPC-Lewis), has filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. #1) and an Application to Proceed *In Forma Pauperis* (Doc. #3). The Court will dismiss the Complaint with leave to amend.

**I.      Application to Proceed *In Forma Pauperis* and Filing Fee**

Plaintiff's Application to Proceed *In Forma Pauperis* will be granted. 28 U.S.C. § 1915(a). Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C. § 1915(b)(1). The Court will assess an initial partial filing fee of $5.22. The remainder of the fee will be collected monthly in payments of 20% of the previous month's income each time the amount in the account exceeds $10.00. 28 U.S.C. § 1915(b)(2). The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according to the statutory formula.

**II.     Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against

**JDDL-K**

a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). If the Court determines that a pleading could be cured by the allegation of other facts, a *pro se* litigant is entitled to an opportunity to amend a complaint before dismissal of the action. See Lopez v. Smith, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (*en banc*).

The Court should not, however, advise the litigant how to cure the defects. This type of advice "would undermine district judges' role as impartial decisionmakers." Pliler v. Ford, 542 U.S. 225, 231 (2004); see also Lopez, 203 F.3d at 1131 n.13 (declining to decide whether the court was required to inform a litigant of deficiencies). Plaintiff's Complaint will be dismissed for failure to state a claim, with leave to amend because the Complaint may possibly be saved by amendment.

**III.    Complaint**

Named as Defendants in the Complaint are: (1) Dora Schriro, Director of the Arizona Department of Corrections (ADOC); (2) D. Edwards, Deputy Warden, Morey Unit, ASPC-Lewis; (3) A. Bradley, Associate Deputy Warden, ASPC-Lewis, Morey Unit; (4) Stuart, Captain, Disciplinary Officer, ASPC-Lewis, Morey Unit; (5) Banes, Correctional Officer II (CO II), ASPC-Lewis, Morey Unit; (6) Vargas, Sergeant, ASPC-Lewis, Morey Unit; (7) Anita Nugent, GED Facilitator, ASPC-Lewis, Morey Unit; and (8) Carbajal, CO, ASPC-Lewis, Morey Unit.

Plaintiff alleges three counts in the Complaint. In Count I, Plaintiff claims that his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution have been violated with regard to disciplinary proceedings, access to the courts, and the free exercise of religion. In Count II, Plaintiff claims that his rights under Article 4 and the First and Fourteenth Amendments of the United States Constitution have been violated with regard to his access to the courts. In Count III, Plaintiff claims that his First Amendment

JDDL-K

- 2 -

1 right to the exercise of religion has been violated.

2 Plaintiff seeks a jury trial, injunctive relief, and compensatory and punitive monetary
3 damages.

4 **IV.     Failure to State a Claim**

5     **A.     Count I**

6 In Count I, Plaintiff claims that his rights under the First, Eighth, and Fourteenth
7 Amendments to the United States Constitution have been violated with regard to disciplinary
8 proceedings, access to the courts, and the free exercise of religion.[1] However, Plaintiff only
9 tangentially makes access-to-the-court allegations in Count I as part of disciplinary
10 proceedings allegations. He makes no allegations in Count I with reference to the free
11 exercise of religion. Accordingly, the Court will treat Plaintiff's claim in Count I as only
12 being made as a disciplinary proceedings claim.

13 Plaintiff complains about two separate disciplinary proceedings in Count I. The first
14 was for using obscene language towards staff, and the second was for disobeying a verbal
15 or written order and threatening a person with harm.

16 In the first disciplinary proceeding, Plaintiff alleges that he was found guilty based on
17 "un[]corroborated 'hear[]say' evidence," despite Plaintiff's contention that a disciplinary
18 report cannot lawfully be based on "un[]corroborated hear[]say evidence, that is not
19 supported by personal knowledge."

20 In the second disciplinary proceeding, Plaintiff alleges that he was found guilty of
21 failing to shave as ordered. Plaintiff contends that prison officials cannot subject him to
22 disciplinary punishment for failing to shave, "in reckless disregard of his permanent medical
23 rec[o]mmendation (waiver) that excuses him from shaving."

24 Although Plaintiff brings Count I under the First, Eighth, and Fourteenth
25 Amendments, he does not explain how the actions he complains about violate any of these
26 Amendments. Because the First and Eighth Amendments do not appear to be implicated by

27 ----
28     [1]Plaintiff has ignored the instruction on the court-approved complaint form to check only one issue.

JDDL-K

- 3 -

1 the disciplinary proceedings in this matter, the Court will construe Count I as being brought
2 solely under the Due Process Clause of the Fourteenth Amendment.

3 In analyzing a due process claim, the Court must first decide whether Plaintiff was
4 entitled to any process, and if so, whether he was denied any constitutionally-required
5 procedural safeguard.

6 Liberty interests which entitle an inmate to due process are "generally limited to
7 freedom from restraint which, while not exceeding the sentence in such an unexpected
8 manner as to give rise to protection by the Due Process Clause of its own force, nonetheless
9 imposes atypical and significant hardship on the inmate in relation to the ordinary incidents
10 of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995) (internal citations omitted).

11 Therefore, to determine whether an inmate is entitled to the procedural protections
12 afforded by the Due Process Clause, the Court must look to the particular restrictions
13 imposed and ask whether they "'present the type of atypical, significant deprivation in which
14 a state might conceivably create a liberty interest.'" Mujahid v. Meyer, 59 F.3d 931, 932 (9th
15 Cir. 1995) (quoting Sandin, 515 U.S. at 486).

16 To determine whether the sanctions are atypical and a significant hardship, courts look
17 to prisoner's conditions of confinement, the duration of the sanction, and whether the
18 sanction will affect the duration of the prisoner's sentence. See Keenan v. Hall, 83 F.3d
19 1083, 1088-89 (9th Cir. 1996). "Atypicality" requires not merely an empirical comparison,
20 but turns on the importance of the right taken away from the prisoner. See Carlo v. City of
21 Chino, 105 F.3d 493, 499 (9th Cir. 1997). See, *e.g.*, Sandin, 515 U.S. at 472 (30 days'
22 disciplinary segregation is not atypical and significant); Torres v. Fauver, 292 F.3d 141, 151
23 (3rd Cir. 2002) (four months in administrative segregation is not atypical and significant);
24 Jacks v. Crabtree, 114 F.3d 983 (9th Cir. 1997) (denial of year sentence reduction is not an
25 atypical and significant hardship); Jones v. Baker, 155 F.3d 810 (6th Cir. 1998) (two and
26 one-half years of administrative segregation is not atypical and significant); Griffin v.
27 Vaughn, 112 F.3d 703, 706-708 (3rd Cir. 1997) (fifteen months' administrative segregation
28 is not atypical and significant); Beverati v. Smith, 120 F.3d 500, 504 (4th Cir. 1997) (six

1  months of confinement in especially disgusting conditions that were "more burdensome than
2  those imposed on the general prison population were not "atypical . . . in relation to the
3  ordinary incidents of prison life.").

4  In Count I, Plaintiff has not alleged or shown that sanctions imposed as a result of his
5  disciplinary convictions violated a liberty interest he had under the Due Process Clause itself,
6  or imposed an "atypical and significant hardship" on him. Sandin, 515 U.S. at 484. In fact,
7  Plaintiff has not identified any of the sanctions that were imposed on him as a result of his
8  disciplinary convictions. Thus, Plaintiff has failed to identify a liberty interest that would
9  require due process protections. Accordingly, Count I will be dismissed for failure to state
10  a claim upon which relief may be granted.

11  **B.     Count II**

12  In Count II, Plaintiff claims that his rights under Article 4 and the First and Fourteenth
13  Amendments of the United States Constitution have been violated with regard to his access
14  to the courts. Plaintiff alleges that: (1) ADOC officials do not maintain a law library at the
15  place of Plaintiff's confinement; (2) there is no legal assistant or attorney located at the place
16  of Plaintiff's confinement to assist him with legal concerns; (3) the prison library contains
17  a "scanty collection" of legal resource materials that is inadequate for legal research; (4) the
18  library contains no state or federal court reporters and does not make them available "via"
19  a legal assistant or attorney; (5) due to a high rate of prison lockdown and library closures,
20  Plaintiff is often forced to pay for legal materials and copies of materials; (6) the library does
21  not contain ADOC's administrative rules as required by law; (7) the library does not contain
22  the names or addresses of state and federal courts, or the addresses of the Governor's Office,
23  the Attorney General's Office, the Arizona Board of Pardons and Paroles, the ADOC's
24  relevant department heads, including their "alleged" legal assistant; and (9) the library is
25  often not available for use by prisoners and legal materials are not delivered to inmates' cells
26  or available to be checked out from the library.

27  To establish that he was denied meaningful access to the courts, a plaintiff must
28  submit evidence showing that he suffered an "actual injury" as a result of the defendants'

1  actions. See Lewis v. Casey, 518 U.S. 343 (1996).  An "actual injury" is "actual prejudice
2  with respect to contemplated or existing litigation, such as the inability to meet a filing
3  deadline or to present a claim." Id. at 348.  "[A]n inmate cannot establish relevant actual
4  injury simply by establishing that his prison's law library or legal assistance program is
5  subpar in some theoretical sense." Id. at 351.  Moreover, the constitutional right of access
6  to a library or legal assistance extends only through the pleading stage. Cornett v. Donovan,
7  51 F.3d 894, 898-900 (9th Cir. 1995).

8  To show actual injury with respect to contemplated litigation, the plaintiff must
9  demonstrate that the conduct of the defendants prevented him from bringing to court a
10 nonfrivolous claim that he wished to present. Lewis, 518 U.S. at 352-53.  That nonfrivolous
11 claim must be a direct or collateral attack on the inmate's sentence, or a challenge to the
12 conditions of his confinement. Id. at 355.  "Impairment of any *other* litigating capacity is
13 simply one of the incidental (and perfectly constitutional) consequences of conviction and
14 incarceration." Id. (emphasis in original).

15 In Count II, Plaintiff specifically alleges that the prison library was "almost
16 completely not available to prisoners for use" from about November 20, 2006 through
17 January 20, 2007, and was "available for use, by inmates, for no more than 20 minutes to an
18 hour per month" from about January 20, 2007 through July 31, 2007.  Plaintiff further alleges
19 that "due to the library closures" from November 2006 to January 20, 2007, he was "unable"
20 to timely file a petition for review to the Arizona Supreme Court in his State criminal case
21 after the Arizona Court of Appeals denied his Petition for Review on December 20, 2006.

22 Plaintiff has failed to show actual injury in Count II because he does not explain how
23 the unavailability of the prison library prevented him from filing a petition for review.  At
24 the very least, Plaintiff could have filed a petition for review explaining the problems that he
25 was currently experiencing with the closure of the prison library.

26 Moreover, to state a viable constitutional claim under 42 U.S.C. § 1983, Plaintiff must
27 show an affirmative link between the alleged injury and the conduct of an individual
28 Defendant. Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).  However, Plaintiff has not

JDDL-K

1  referred to any named Defendant in Count II.

2  Accordingly, Count II will be dismissed for failure to state a claim upon which relief
3  may be granted.

### C. Count III

5  In Count III, Plaintiff claims that his First Amendment right to the free exercise of
6  religion has been violated. Plaintiff alleges that his religious belief is "the Religion of
7  Shabazz," which is based on the tenets of "the Honorable Elijah Muhammad," and that he
8  has been deprived of the reasonable opportunity to practice his religion. Plaintiff further
9  alleges that the ADOC's practice is to relegate inmate practitioners of the "Religion of
10 Shabazz, per the tenants the Wise God, Elijah Muhammad" to its Islamic religious service
11 contractors for assistance with religious matters and that these contracted Islamic chaplains
12 only assist inmates who are of the same religious denomination as they are.

13 Prisoners retain the First Amendment right directing that no law shall prohibit the free
14 exercise of religion. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); Henderson v.
15 Terhune, 379 F.3d 709 (9th Cir. 2004). To state a First Amendment, free-exercise-of-
16 religion claim, a plaintiff must allege that a defendant burdened the practice of plaintiff's
17 religion by preventing him from engaging in a sincerely held religious belief and that the
18 defendant did so without any justification reasonably related to legitimate penological
19 interests. Shakur v. Schriro, 514 F.3d 878 (9th Cir. 2008).

20 Plaintiff has failed to show how he has been prevented from engaging in a sincerely
21 held religious belief. Plaintiff's conclusory and vague allegation that he has been denied the
22 opportunity to practice his religious belief is not sufficient to state a First Amendment, free-
23 exercise-of-religion claim. Although *pro se* pleadings are liberally construed, Haines v.
24 Kerner, 404 U.S. 519 (1972), conclusory and vague allegations will not support a cause of
25 action. Ivey v. Board of Regents of the University of Alaska, 673 F.2d 266 (9th Cir. 1982).
26 Further, a liberal interpretation of a civil rights complaint may not supply essential elements
27 of the claim that were not initially pled. Id. at 268.

28 Also, Plaintiff has not shown an affirmative link between the alleged injury and the

JDDL-K

- 7 -

1 conduct of an individual named Defendant in Count III.  Rizzo, 423 U.S. at 371-72, 377.
2 Indeed, Plaintiff has not referred to any named Defendant in Count III.
3      Accordingly, Count III will be dismissed for failure to state a claim upon which relief
4 may be granted.

## V.     Leave to Amend

6      Because no claims now remain, Plaintiff's Complaint will be dismissed for failure to
7 state a claim upon which relief may be granted.  Within 30 days, Plaintiff may submit a first
8 amended complaint to cure the deficiencies outlined above.  The Clerk of Court will mail
9 Plaintiff a court-approved form to use for filing a first amended complaint.  If Plaintiff fails
10 to use the court-approved form, the Court may strike the amended complaint and dismiss this
11 action without further notice to Plaintiff.

12      Plaintiff must clearly designate on the face of the document that it is the "First
13 Amended Complaint."  The first amended complaint must be retyped or rewritten in its
14 entirety on the court-approved form and may not incorporate any part of the original
15 Complaint by reference.  Plaintiff may include only one claim per count.

16      In any amended complaint, Plaintiff must write out short, plain statements telling the
17 Court (1) the constitutional right Plaintiff believes was violated; (2) the name of the person
18 who violated the right; (3) exactly what that individual did or failed to do; (4) how the action
19 or inaction of that person is connected to the violation of Plaintiff's constitutional rights; and
20 (5) what specific injury Plaintiff suffered because of that person's conduct.  See Rizzo, 423
21 U.S. at 371-72, 377.  If the person named as a defendant was a supervisory official, Plaintiff
22 must either state that the defendant personally participated in the constitutional deprivation
23 (and tell the Court the five things listed above), or Plaintiff must state, if he can do so in good
24 faith, that the defendant was aware of the similar widespread abuses, but with deliberate
25 indifference to Plaintiff's constitutional rights, failed to take action to prevent further harm
26 to Plaintiff (and tell the Court some facts to support this claim).  King v. Atiyeh, 814 F.2d
27 565, 568 (9th Cir. 1987); see Monell v. New York City Department of Social Services, 436
28 U.S. 658, 691 (1978).

JDDL-K      - 8 -

1    Plaintiff must repeat this process for each person he names as a defendant. If Plaintiff
2  fails to affirmatively link the conduct of each named defendant with the specific injury
3  suffered by Plaintiff, the claim against that defendant will be dismissed for failure to state a
4  claim. Conclusory allegations that a defendant or group of defendants have violated a
5  constitutional right are not acceptable and will be dismissed.

6    A first amended complaint supersedes the original complaint. Ferdik v. Bonzelet, 963
7  F.2d 1258, 1262 (9th Cir. 1992); Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542,
8  1546 (9th Cir. 1990). After amendment, the Court will treat an original complaint as
9  nonexistent. Ferdik, 963 F.2d at 1262. Any cause of action that was raised in the original
10 complaint is waived if it is not raised in a first amended complaint. King, 814 F.2d at 567.

11 **VI.    Warnings**

12 **A.    Release**

13   Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release.
14 Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay
15 the balance or (2) show good cause, in writing, why he cannot. Failure to comply may result
16 in dismissal of this action.

17 **B.    Address Changes**

18   Plaintiff must file and serve a notice of a change of address in accordance with Rule
19 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other
20 relief with a notice of change of address. Failure to comply may result in dismissal of this
21 action.

22 **C.    Copies**

23   Plaintiff must submit an additional copy of every filing for use by the Court. See
24 LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice
25 to Plaintiff.

26 **D.    Possible "Strike"**

27   Because the Complaint has been dismissed for failure to state a claim, if Plaintiff fails
28 to file an amended complaint correcting the deficiencies identified in this Order, the

1  dismissal will count as a "strike" under the "3-strikes" provision of 28 U.S.C. § 1915(g).
2  Under the 3-strikes provision, a prisoner may not bring a civil action or appeal a civil
3  judgment *in forma pauperis* under 28 U.S.C. § 1915 "if the prisoner has, on 3 or more prior
4  occasions, while incarcerated or detained in any facility, brought an action or appeal in a
5  court of the United States that was dismissed on the grounds that it is frivolous, malicious,
6  or fails to state a claim upon which relief may be granted, unless the prisoner is under
7  imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

    **E.**     **Possible Dismissal**

9  If Plaintiff fails to timely comply with every provision of this Order, including these
10 warnings, the Court may dismiss this action without further notice. See Ferdik, 963 F.2d at
11 1260-61 (a district court may dismiss an action for failure to comply with any order of the
12 Court).

    **IT IS HEREBY ORDERED:**

14     (1)     Plaintiff's Application to Proceed *In Forma Pauperis* (Doc. #3) is **granted**.
15     (2)     As required by the accompanying Order to the appropriate government agency,
16 Plaintiff **must pay** the $350.00 filing fee and is assessed an initial partial filing fee of $5.22.
17     (3)     The Complaint (Doc. #1) is **dismissed** for failure to state a claim. Plaintiff has
18 **30 days** from the date this Order is filed to file a first amended complaint in compliance with
19 this Order.
20     (4)     **If** Plaintiff fails to file an amended complaint within 30 days, the Clerk of
21 Court must, without further notice, enter a judgment of dismissal of this action with prejudice
22 that states that the dismissal counts as a "strike" under 28 U.S.C. § 1915(g).
23 //
24 //
25 //
26 //
27 //
28 //

JDDL-K

- 10 -

1  (5) The Clerk of Court **must mail** Plaintiff a court-approved form for filing a civil
2  rights complaint by a prisoner.

3  DATED this 28th day of April, 2008.

```
                         Stephen M. McNamee
                         United States District Judge
```