1   **WO**                                                                    RP

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                      **FOR THE DISTRICT OF ARIZONA**

8

9   Leonard L. Manning,                    )    No. CV 07-2553-PHX-SMM (LOA)
                                           )
10              Plaintiff,                  )    **ORDER**
                                           )
11  vs.                                     )
                                           )
12  Dora Schriro, et al.,                   )
                                           )
13              Defendants.                 )
    _____)

14

15         Pending before the Court are Plaintiff's "Motion For A Preliminary Injunction"

16  (Doc. #9), "Declaration Supporting Plaintiff's Request For A Preliminary Injunction"

17  (Doc. #10), "Motion For An Extension of Time To File An Amended Complaint" (Doc.

18  #11), and "First Amended Complaint" (Doc. #12) (Amended Complaint).

19         The Court will deny the "Motion For A Preliminary Injunction" (Doc. #9), grant the

20  "Motion For An Extension of Time To File An Amended Complaint" (Doc. #11), require

21  Defendant P. Smith to answer Count II of the Amended Complaint, and dismiss the

22  remaining counts and Defendants for failure to state a claim upon which relief may be

23  granted.

24  **I.    Procedural Background**

25         On December 17, 2007, Plaintiff Leonard L. Manning, who is confined in the Arizona

26  State Prison Complex-Eyman (ASPC-Eyman), filed a *pro se* civil rights Complaint pursuant

27  to 42 U.S.C. § 1983 (Doc. #1) and an Application to Proceed *In Forma Pauperis* (Doc. #3).

28  By Order filed April 28, 2008 (Doc. #4), the Court granted the Application to Proceed *In*

*Forma Pauperis*, assessed an initial partial filing fee, and dismissed the Complaint for failure to state a claim. Plaintiff was given 30 days from the filing date of the Order to file a first amended complaint in compliance with the Order.

On May 28, 2008, Plaintiff filed a "Motion For Extension of Time to File Amended Complaint" (Doc. #7), which the Court granted by Order filed June 3, 2008 (Doc. #8). Plaintiff was given 20 days from the filing date of the Order to file a first amended complaint.

**II.      Motion for Extension of Time to File Amended Complaint**

On July 1, 2008, Plaintiff filed a "Motion For An Extension of Time To File An Amended Complaint" (Doc. #11), in which he requests a 20-day extension of time to file his Amended Complaint. Plaintiff's Motion will be granted.

**III.     Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints and amended complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

**IV.     Amended Complaint**

On July 1, 2008, Plaintiff filed his Amended Complaint (Doc. #12). With regard to his Amended Complaint, Plaintiff should take notice that all causes of action alleged in an original complaint which are not alleged in an amended complaint are waived. Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1546 (9th Cir. 1990) ("an amended pleading supersedes the original"); King v. Atiyeh, 814 F.2d 565 (9th Cir. 1987). Accordingly, the Court will consider only those claims specifically asserted in Plaintiff's Amended Complaint with respect to only those Defendants specifically named in the Amended Complaint.

Named as Defendants in the Amended Complaint are: (1) Dora Schriro, Director of the Arizona Department of Corrections (ADOC); (2) D. Edwards, Deputy Warden,

Disciplinary Appeals Officer, Morey Unit, Arizona State Prison Complex-Lewis (ASPC-Lewis); (3) Jackson, Corrections Officer (CO) IV, Morey Unit, ASPC-Lewis; (4) Stuart, Captain, Disciplinary Hearing Officer, Morey Unit, ASPC-Lewis; (5) O'Brian, CO III; (6) Carbajal, CO II; (7) Banes, CO II, Security Officer; (8) Vargas, Sergeant (Sgt.), Security Officer; (9) Kuntzi, Correctional Medical Worker; (10) Anita Nugent, Educational Administrator; (11) P. Smith, Institutional Chaplain; and (12) S. Latto, Librarian II.

Plaintiff alleges three counts in the Amended Complaint. In Count I, Plaintiff claims that his rights under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution have been violated with regard to a threat of retaliation and disciplinary proceedings. In Count II, Plaintiff claims that his rights under the Religious Freedom Restoration Act and the First Amendment of the United States Constitution have been violated with regard to exercise of his religion. In Count III, Plaintiff claims that his rights under Bounds v. Smith, 430 U.S. 817, 821 (1977), and the First and Fourteenth Amendments of the United States Constitution have bee violated with regard to access to the court.

Plaintiff seeks a jury trial, injunctive relief, and compensatory and punitive monetary damages.

**V.   Discussion**

    **A.   Count I**

In Count I, Plaintiff claims that his rights under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution have been violated with regard to a threat of retaliation and disciplinary proceedings. Plaintiff complains about two separate disciplinary proceedings in Count I. The first disciplinary proceeding was for using abusive language towards Defendant Banes and the second disciplinary proceeding was for refusing Defendant Vargas' direct order to shave.

    **1.   Due Process and Equal Protection Claims**

In the first disciplinary proceeding, Plaintiff alleges that his due process and equal protection rights were violated when Defendant Banes issued him a disciplinary citation on September 18, 2005, for using abusive language. Plaintiff claims that Defendant Banes did

1    not "see" Plaintiff using any abusive language "toward" him and "singled" him out from

2    several other inmates for punishment.  Plaintiff further claims that the Disciplinary Hearing

3    Officer, Defendant Stuart, abusively failed to dismiss the disciplinary citation for lack of

4    evidence at the disciplinary hearing and that the Disciplinary Hearing Officer, Defendant

5    Edwards, upheld the disciplinary finding with the reasoning: "My CO's are not racist.  I

6    advise you to not pursue this matter."

7        In analyzing a due process claim, the Court must first decide whether Plaintiff was

8    entitled to any process, and if so, whether he was denied any constitutionally required

9    procedural safeguard.

10       Liberty interests which entitle an inmate to due process are "generally limited to

11   freedom from restraint which, while not exceeding the sentence in such an unexpected

12   manner as to give rise to protection by the Due Process Clause of its own force, nonetheless

13   imposes atypical and significant hardship on the inmate in relation to the ordinary incidents

14   of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995) (internal citations omitted).

15       Therefore, to determine whether an inmate is entitled to the procedural protections

16   afforded by the Due Process Clause, the Court must look to the particular restrictions

17   imposed and ask whether they "'present the type of atypical, significant deprivation in which

18   a state might conceivably create a liberty interest.'"  Mujahid v. Meyer, 59 F.3d 931, 932 (9th

19   Cir. 1995) (quoting Sandin, 515 U.S. at 486).

20       To determine whether the sanctions are atypical and a significant hardship, courts look

21   to prisoner's conditions of confinement, the duration of the sanction, and whether the

22   sanction will affect the duration of the prisoner's sentence.  See Keenan v. Hall, 83 F.3d

23   1083, 1088-89 (9th Cir. 1996).  "Atypicality" requires not merely an empirical comparison,

24   but turns on the importance of the right taken away from the prisoner.  See Carlo v. City of

25   Chino, 105 F.3d 493, 499 (9th Cir. 1997).  See, e.g., Sandin, 515 U.S. at 472 (30 days'

26   disciplinary segregation is not atypical and significant); Torres v. Fauver, 292 F.3d 141, 151

27   (3rd Cir. 2002) (four months in administrative segregation is not atypical and significant);

28    Jacks v. Crabtree, 114 F.3d 983 (9th Cir. 1997) (denial of year sentence reduction is not an

atypical and significant hardship); Jones v. Baker, 155 F.3d 810 (6th Cir. 1998) (two and one-half years of administrative segregation is not atypical and significant); Griffin v. Vaughn, 112 F.3d 703, 706-708 (3rd Cir. 1997) (fifteen months' administrative segregation is not atypical and significant); Beverati v. Smith, 120 F.3d 500, 504 (4th Cir. 1997) (six months of confinement in especially disgusting conditions that were "more burdensome than those imposed on the general prison population were not "atypical . . . in relation to the ordinary incidents of prison life.").

Plaintiff has not alleged or shown that sanctions imposed as a result of his first disciplinary conviction violated a liberty interest he had under the Due Process Clause itself, or imposed an "atypical and significant hardship" on him.  Sandin, 515 U.S. at 484. Although Plaintiff has not specifically alleged what sanctions were imposed on him, he does allege that "as a result" of this "Disciplinary Citation," he was "dis[]allowed a work assignment, for a period of 6 months," and it "contributed to him being reclassified to a more restrictive custody."  Neither of these "results" rise to the level of an atypical and significant hardship.  Thus, Plaintiff has failed to identify a liberty interest that would require due process protections.

For purposes of equal protection, prisoners are not a suspect class.  See Webber v. Crabtree, 158 F.3d 460, 461 (9th Cir. 1998); McQueary v. Blodgett, 924 F.2d 829, 834 (9th Cir. 1991).  Inmates are not entitled to identical treatment as other inmates merely because they are all inmates.  See Norvell v. Illinois, 373 U.S. 420 (1963).  A mere demonstration of inequality is not enough to establish a violation of the Equal Protection Clause.  When a suspect class is not implicated, the complainant must allege invidious discriminatory intent. McQueary, 924 F.2d at 834-35.  However, conclusory allegations alone do not establish an equal protection violation without proof of invidious discriminatory intent.  See Village of Arlington Heights v. Metro. Housing Dev. Corp., 429 U.S. 252, 265 (1977).  In addition, when a suspect class is not implicated, the court must determine whether the alleged discrimination is "patently arbitrary and bears no rational relationship to a legitimate governmental interest."  Vermouth v. Corrothers, 827 F.2d 599, 602 (9th Cir. 1987) (internal

1   quotations omitted).

2        Here, Plaintiff has failed to allege that he is a member of a suspect class, or that

3   Defendants' conduct was the result of purposeful or invidious discrimination, or that the

4   conduct bore no rational relationship to a legitimate governmental interest.  Plaintiff's

5   conclusory allegation that the Disciplinary Report "was arbitrary, and/or racist, because it

6   singled []out the Plaintiff, from amongst several other inmates, for punishment," is not

7   sufficient to state a claim under the Equal Protection Clause of the Fourteenth Amendment.

8        **2.     Deliberate Indifference Claim**

9        In the second disciplinary proceeding, Plaintiff alleges that after Defendant Vargas

10  seized a copy of Plaintiff's "Grooming (Shaving) Waiver" and told Plaintiff to shave,

11  Defendant Vargas issued Plaintiff a disciplinary citation on September 17, 2006, for

12  disobeying his direct order to shave.  Plaintiff also alleges that Defendant Kuntzi "'falsely'

13  indicated" to Defendant Vargas that Plaintiff's "Grooming (Shaver) Waiver" had "expired"

14  and that this was included in Defendant Vargas' Disciplinary Report. Plaintiff further alleges

15  that Defendant Carbajal, Coordinator of Discipline, and Defendant Stuart, Disciplinary

16  Hearing Officer, had a "duty to dispose" of Defendant Vargas' disciplinary citation when

17  Plaintiff presented both of them with a copy of his "permanent Medical Shaving

18  Prescription." Presumably, they both failed to "dispose" of the disciplinary citation. Plaintiff

19  claims that the actions of Defendants Vargas, Kuntzi, Carbajal, and Stuart were "consistent

20  to deliberate indifference to [P]laintiff's medical prescription."

21        To state a claim under the Eighth Amendment for prison medical care, a prisoner must

22  allege "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091 (9th

23  Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  A plaintiff must show (1) a

24  "serious medical need" by demonstrating that failure to treat the condition could result in

25  further significant injury or the unnecessary and wanton infliction of pain and (2) the

26  defendant's response was deliberately indifferent.  Jett, 439 F.3d at 1096 (quotations

27  omitted).  To act with deliberate indifference, a prison official must both know of and

28  disregard an excessive risk to inmate health; the official must both be aware of facts from

1   which the inference could be drawn that a substantial risk of serious harm exists and he must

2   also draw the inference.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).

3         The indifference must be substantial.  Estelle, 429 U.S. at 105-06.  The action must

4   rise to a level of "unnecessary and wanton infliction of pain."  Id. at 106.  Claims of

5   "indifference," "negligence," or "medical malpractice" do not support a claim under 42

6   U.S.C. § 1983.  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980).  "A

7   difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious

8   medical needs."  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  A mere delay in

9   medical care, without more, is insufficient to state a claim against prison officials for

10  deliberate indifference.  See Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404,

11  407 (9th Cir. 1985).  The indifference must be substantial.  The action must rise to a level of

12  "unnecessary and wanton infliction of pain."  Estelle, 429 U.S. at 105-06.  Not every claim

13  by a prisoner that he or she has received inadequate medical treatment states a violation of

14  the Eighth Amendment.

15        In the instant case, Plaintiff has failed to allege facts that show that Defendant Vargas,

16  Kuntzi, Carbajal, or Stuart was deliberately indifferent to a serious medical need of Plaintiff.

17  Simply having a medical waiver from shaving does not show that Plaintiff had a serious

18  medical need and Plaintiff does not allege that he had a serious medical condition that

19  prevented him from shaving.  Generally, the discomfort that a prisoner might experience

20  while shaving does not rise to the level of a serious medical need protected by the Eighth

21  Amendment.  See Shabazz v. Barnauskas, 790 F.2d 1536, 1538 (11th Cir. 1986) (injuries

22  associated with shaving, including "bleeding, inflamation, irritation, ingrowing of hairs,

23  infection, purulence and pain" did not constitute a sufficiently serious medical problem to

24  warrant Eighth Amendment protection).  Moreover, Plaintiff does not allege that he was

25  actually forced to shave.

26        **3.    Threat of Retaliation Claim**

27        In Count I, Plaintiff also makes a threat of retaliation claim against Defendants

28  Edwards, Jackson, O'Brian, Nugent, Vargas, Kuntzi, Carbajal, and Stuart.   Although

1   Plaintiff's threat of retaliation claim is both conclusory and vague, it appears that it is based
2   on Defendant Edwards' "reasoning" in denying Defendant Stuart's disciplinary finding that
3   "[m]y CO's are not racist.  I advise you to not pursue this matter."  Plaintiff states that he
4   "perceived Mr. Edward's admonitory 'advisement[,'] to not pursue an appeal, of his decision,
5   as a very serious threat to himself."

6        Plaintiff claims that actions of Defendant Jackson, in keeping him locked in an
7   isolation holding cage outside of Defendant Jackson's office for hours, was "consistent to
8   Mr. Edwards threat of retaliation and a pattern of harassment."  Plaintiff further claims that
9   Defendant O'Brian's actions in failing to respond to an April 9, 2007 Informal Grievance
10  regarding his "GED" test scores "was consistent to the Deputy Warden's threat and policy
11  of harassment."  Similarly, Plaintiff claims that the actions of Defendant Anita Nugent in not
12  correcting incorrect "GED" test scores and not finding out what happened to Plaintiff's test
13  results was "consistent to Deputy Warden Edward's threat, of retaliation and harassment."
14  Lastly, Plaintiff claims that the actions of Defendants Vargas, Kunzi, Carbajal, and Stuart
15  with regard to his disciplinary proceedings concerning his refusal to shave were "consistent
16  to . . . Deputy Edward[s'] policy of threats, intimidation and harassment."

17       "A prisoner suing prison officials under section 1983 for retaliation must allege that
18  he was retaliated against for exercising his constitutional rights and that the retaliatory action
19  does not advance legitimate penological goals, such as preserving institutional order and
20  discipline."  Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994).  Thus, to succeed on
21  the merits of a retaliation claim, a prisoner must demonstrate that he was retaliated against
22  for exercising his constitutional rights, and he must also demonstrate that the retaliatory
23  action does not advance a legitimate penological goal, or is not narrowly tailored to achieve
24  that goal.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).

25       Although pro se pleadings are liberally construed, Haines v. Kerner, 404 U.S. 519
26  (1972), conclusory and vague allegations will not support a cause of action.  Ivey v. Board
27  of Regents of the University of Alaska, 673 F.2d 266 (9th Cir. 1982).  Further, a liberal
28  interpretation of a civil rights complaint may not supply essential elements of the claim that

1    were not initially pled. Id. at 268.

2          Plaintiff has not alleged in Count I that any of the Defendants retaliated against him

3    for exercising a particular constitutional right.  Moreover, even if the Court were to infer

4    such an allegation from some of the reasons Plaintiff gives for the retaliation, Plaintiff has

5    clearly failed to allege that the retaliatory action did not advance a legitimate penological

6    goal, or was not narrowly tailored to achieve that goal.

7          Also, all of Plaintiff's retaliation claims are extremely conclusory and vague.  Mere

8    allegations that a Defendant's actions were "consistent" with a vague threat that Defendant

9    Edwards made one to two years prior to the actions in question are not sufficient to state a

10   constitutional retaliation claim.

11         Accordingly, for the above reasons, Count I will be dismissed for failure to state a

12   claim for relief upon which relief may be granted.

13         **B.    Count II**

14         In Count II, Plaintiff claims that his rights under the Religious Freedom Restoration

15   Act and the First Amendment of the United States Constitution have been violated with

16   regard to exercise of his religion.  Plaintiff alleges that his religious belief is "the Religion

17   of Shabazz," which is based on the tenets of "the Honorable Elijah Muhammad," and that

18   on August 4, 2005, he "forwarded" an Inmate Letter to Defendant P. Smith, in which he

19   requested to be placed on a "Kosher Religious Diet," to have his "Religious Preference"

20   indicate "Coptic Monophysitic Christianity," and to be authorized to attend "Catholic

21   Services" because they were somewhat similar to his own faith.  Plaintiff further alleges that

22   Defendant Smith refused to authorize a "Kosher diet" per his religious tenets and told

23   Plaintiff he would have to submit a "change of Religious Preference Form" along with a

24   "letter of membership[] from a Catholic Organization" if he wanted "authorization to attend

25   'a' prison religious service."

26         Liberally construed, Plaintiff has stated a claim against Defendant Smith in Count II.

27   Accordingly, the Court will require Defendant Smith to answer Count II of the Amended

28   Complaint.

1    **C.    Count III**

2        In Count III, Plaintiff claims that his rights under <u>Bounds v. Smith</u>, 430 U.S. 817, 821

3    (1977) and First and Fourteenth Amendments of the United States Constitution have been

4    violated with regard to access to the court.  In order to state a viable constitutional claim

5    under 42 U.S.C. § 1983, Plaintiff must show an affirmative link between the alleged injury

6    and the conduct of an individual Defendant.  <u>Rizzo v. Goode</u>, 423 U.S. 362, 371-72, 377

7    (1976).  However, as he did with his access to the court claim in the original Complaint,

8    Plaintiff has not referred to any named Defendant in Count III.

9        In the Court's April 28, 2008 Order (Doc. #4) dismissing the original Complaint with

10   leave to amend, Plaintiff was specifically admonished that in any amended complaint, he

11   must write out short, plain statements telling the Court (1) the constitutional right Plaintiff

12   believes was violated; (2) the name of the person who violated the right; (3) exactly what that

13   individual did or failed to do; (4) how the action or inaction of that person is connected to the

14   violation of Plaintiff's constitutional rights; and (5) what specific injury Plaintiff suffered

15   because of that person's conduct.  <u>See</u> <u>Rizzo</u>, 423 U.S. at 371-72, 377.  Plaintiff has failed

16   to comply with the Court's admonition in Count III.

17       Accordingly, Count III will be dismissed for failure to state a claim upon which relief

18   may be granted.

19   **VI.    Dismissal of Defendants**

20       Because no claims now remain against them, Defendants Dora Schriro, D. Edwards,

21   Jackson, Stuart, O'Brian, Carbajal, Banes, Vargas, Kuntzi, Anita Nugent, and S. Latto, will

22   be dismissed from this action for failure to state a claim upon which relief may be granted.

23   **VII.    Motion for A Preliminary Injunction**

24       On June 24, 2008, Plaintiff filed a "Motion For A Preliminary Injunction" (Doc. #9)

25   (Motion), which includes a "Memorandum of Points and Authorities" (Memorandum), and

26   a "Declaration Supporting Plaintiff's Request For A Preliminary Injunction" (Doc. #10)

27   (Declaration).  It is unclear precisely what injunctive relief Plaintiff is seeking.  In his

28   Motion, Plaintiff merely states that he "hereby request[s] a Preliminary Injunction,

1    Fed.R.Civ.P., Rule 65(a)." The closest Plaintiff comes to clarifying his request comes in his

2    Memorandum where he states that he "hereby moves for a Preliminary Injunction to ensure

3    that he is not further deprived of legal services, and adequate court access."

4             The purpose of preliminary injunctive relief is to preserve the status quo or to prevent

5    irreparable injury pending the resolution of the underlying claim. Sierra On-Line, Inc. v.

6    Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984). The Ninth Circuit recognizes

7    two tests for determining whether a district court should grant a preliminary injunction.

8    Under the traditional standard, a plaintiff must show: (1) a strong likelihood of success on

9    the merits; (2) a possibility of irreparable injury should the injunction not be granted; (3) that

10   the balance of hardships tips in his favor; and in some cases (4) that an injunction advances

11   the public interest. Johnson v. Cal. State Bd. of Accountancy, 72 F.3d 1427, 1430 (9th Cir.

12   1995). Alternatively, the plaintiff may show "either a combination of probable success on

13   the merits and the possibility of irreparable injury or that serious questions are raised and

14   balance of hardships tips sharply in his favor." Id. Under either test, the movant bears the

15   burden of persuasion, Mattel, Inc. v. Greiner & Hausser GmbH, 354 F.3d 857, 869 (9th Cir.

16   2003), and must demonstrate a significant threat of irreparable injury. AGCC v. Coalition

17   for Economic Equity, 950 F.2d 1401, 1410 (9th Cir. 1991).

18           Plaintiff's Motion appears to be based primarily on problems and delays that he has

19   experienced in getting access to legal research materials in the library and in getting copies

20   of his Amended Complaint. Apparently, Plaintiff was refused copies of the Amended

21   Complaint because his prison account balance had insufficient funds, and, therefore, he was

22   required to submit the Amended Complaint to the prison paralegal for approval to obtain

23   copies. Plaintiff complains that if he were to have submitted his Amended Complaint to the

24   paralegal for approval, he would not have made the Court's deadline.

25           Aside from the fact that Plaintiff has not clearly explained who and what he wishes

26   to enjoin with a preliminary injunction, the Court finds that Plaintiff has not demonstrated

27   a significant threat of irreparable injury. As he has done in filing the Amended Complaint,

28   Plaintiff is free to file a motion with this Court asking for extensions of time to file required

1    pleadings when, and if, he is hindered in making copies for filing purposes.

2         Accordingly, Plaintiff's Motion will be denied.

3    **VIII.  Warnings**

4         **A.    Address Changes**

5         Plaintiff must file and serve a notice of a change of address in accordance with Rule

6    83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other

7    relief with a notice of change of address.  Failure to comply may result in dismissal of this

8    action.

9         **B.    Copies**

10        Plaintiff must serve Defendant, or counsel if an appearance has been entered, a copy

11   of every document that he files.  Fed. R. Civ. P. 5(a).  Each filing must include a certificate

12   stating that a copy of the filing was served.  Fed. R. Civ. P. 5(d).  Also, Plaintiff must submit

13   an additional copy of every filing for use by the Court.  See LRCiv 5.4.  Failure to comply

14   may result in the filing being stricken without further notice to Plaintiff.

15        **C.    Possible Dismissal**

16        If Plaintiff fails to timely comply with every provision of this Order, including these

17   warnings, the Court may dismiss this action without further notice.  See Ferdik v. Bonzelet,

18   963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to

19   comply with any order of the Court).

20   **IT IS ORDERED:**

21        (1)    Plaintiff's "Motion For A Preliminary Injunction" (Doc. #9) is **denied**.

22        (2)    Plaintiff's "Motion For An Extension of Time To File An Amended

23   Complaint" (Doc. #11) is **granted**.

24        (3)    Counts I and III of the Amended Complaint (Doc. #12) are **dismissed without**

25   **prejudice** for failure to state a claim upon which relief may be granted.

26        (4)    Defendants Dora Schriro, D. Edwards, Jackson, Stuart, O'Brian, Carbajal,

27   Banes, Vargas, Kuntzi, Anita Nugent, and S. Latto are **dismissed from this action** for failure

28   to state a claim upon which relief may be granted.

1        (5)     Defendant P. Smith **must answer** Count II of the Amended Complaint.

2        (6)     The Clerk of Court **must send** Plaintiff a service packet including the

3   Amended Complaint (Doc. #12), this Order, and both summons and request for waiver forms

4   for Defendant P. Smith.

5        (7)     Plaintiff **must complete and return** the service packet to the Clerk of Court

6   within 20 days of the date of filing of this Order.  The United States Marshal will not provide

7   service of process if Plaintiff fails to comply with this Order.

8        (8)     **If** Plaintiff does not either obtain a waiver of service of the summons or

9   complete service of the Summons and Amended Complaint on Defendant Smith within 120

10   days of the filing of the Complaint or within 60 days of the filing of this Order, whichever

11   is later, the action **may be dismissed**.  Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(I).

12        (9)     The United States Marshal **must retain** the Summons, a copy of the Amended

13   Complaint (Doc. #12), and a copy of this Order for future use.

14        (10)    The United States Marshal **must notify** Defendant P. Smith of the

15   commencement of this action and request waiver of service of the summons pursuant to Rule

16   4(d) of the Federal Rules of Civil Procedure.  The notice to Defendant must include a copy

17   of this Order.  The Marshal must immediately file requests for waivers that were returned as

18   undeliverable and waivers of service of the summons.  If a waiver of service of summons is

19   not returned by Defendant within 30 days from the date the request for waiver was sent by

20   the Marshal, the Marshal must:

21        (a)    **personally serve** copies of the Summons, Amended Complaint, and this

22        Order upon Defendant Smith pursuant to Rule 4(e)(2) of the Federal Rules of Civil

23        Procedure; and

24        (b)    within 10 days after personal service is effected, **file** the return of service

25        for Defendant, along with evidence of the attempt to secure a waiver of service of the

26        summons and of the costs subsequently incurred in effecting service upon Defendant.

27        The costs of service must be enumerated on the return of service form (USM-285) and

28        must include the costs incurred by the Marshal for photocopying additional copies of

1   the Summons, Amended Complaint, or this Order and for preparing new process

2   receipt and return forms (USM-285), if required. Costs of service will be taxed against

3   the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil

4   Procedure, unless otherwise ordered by the Court.

5   (11)   **If Defendant agrees to waive service of the Summons and Amended**

6   **Complaint, he must return the signed waiver forms to the United States Marshal, not**

7   **the Plaintiff.**

8   (12)   Defendant P. Smith **must answer** Count II of the Amended Complaint or

9   otherwise respond by appropriate motion within the time provided by the applicable

10   provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

11   (13)   This matter is **referred** to Magistrate Judge Lawrence A. Anderson pursuant

12   to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for further proceedings.

13   DATED this 9th day of September, 2008.

14

15

16                               Stephen M. McNamee
17                               United States District Judge

18

19

20

21

22

23

24

25

26

27

28